IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL DAVIS,                                    No. Civ. S-06-2449 RRB DAD

      Plaintiff,                          Memorandum of Opinion
   v.                                                    and Order

ADVANCED CARE TECHNOLOGIES,
INC., WORLD WIDE TECHNOLOGIES,
LLC, and BRACHYSCIENCES, INC.,

      Defendants.         /


    Paul Davis ("Davis") filed an action against his former

employers Advanced Care Technologies, Inc. ("ACM"), World Wide

Medical Technologies, LLC ("World Wide"), and BrachySciences,

Inc. ("BrachySciences") (collectively "Defendants") seeking a

declaration that a covenant not to compete in his employment

contract is invalid and unenforceable under California law.

Davis now moves for summary judgment on the ground that the

covenant not to compete is void as a matter of law.  Defendants

filed a joint opposition and cross-motion for summary judgment

contending that Connecticut law is controlling and that the

covenant not to compete is valid and enforceable as a matter of law.[1]  For the reasons stated below, the Court GRANTS the motion.[2]

## I. BACKGROUND

From 2003 until October 2006, Davis worked as a sales representative and sales manager for Defendants, a coalition of related pharmaceutical companies that collectively develop, market, sell and distribute radioactive seeds, delivery systems (e.g., needles) and ancillary equipment used in brachytherapy[3] implants for the treatment of early stage prostate cancer.

---

[1]  Davis argues that Defendants' cross-motion for summary judgment, filed jointly with the opposition to Davis' summary judgment motion, was untimely and should be disregarded. Defendants' filed the joint opposition and cross-motion on July 25, 2007, more than two weeks after the court's July 6, 2007 deadline for dispositive motions.  Because the court did not grant Defendants leave to file the late cross-motion for summary judgment, it is untimely.  Therefore, the court treats Defendants' motion as an opposition to Davis' motion for summary judgment.  See Martinez v. Home Depot USA, Inc., 2007 WL 926808, *2 (E.D. Cal. 2007).

[2]  Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).  As a result, the oral argument presently scheduled for Wednesday, August 8, 2007, at 10:00 a.m., is hereby **VACATED**.

[3]  Brachytherapy is a form of radiotherapy commonly used to treat prostate cancer whereby a radioactive source is placed inside or next to the cancerous area requiring treatment. Def.'s UMF ¶ 2.

Pl.'s Stmt. of Undisputed Material Facts ("UMF") In Support of Pl.'s Mot. for Summary Judgment/Adjudication ("MSJ/MSA") ¶¶ 3, 5, 25 & 32; Def.'s Stmt. of Undisputed Material Facts ("UMF") In Opp. to Pl.'s Mot. for Summary Judgment/Adjudication ("MSJ/MSA") ¶ 1.  Defendants are related entities insofar as they share common ownership, maintain centralized personnel policies and practices, and are headquartered and maintain their principal place of business in Connecticut.  Def.'s UMF ¶¶ 3 & 7.

Davis is a former sales representative and sales manager of Defendants assigned to the western region of the United States and based out of California.  Pl.'s UMF ¶¶ 1-3, 5 & 8.  In January 2003, Davis was hired as a sales representative for World Wide.  Pl.'s UMF ¶¶ 3-5.  Shortly thereafter, in July or August 2003, Davis signed an Employee Confidentiality and Non-Competition Agreement ("Non-Competition Agreement").  Pl.'s UMF ¶ 11; Def.'s UMF ¶ 16.  This agreement forbids Davis from revealing trade secrets or working for a competing company for two years after leaving Defendants' employ.  Pl.'s UMF ¶¶ 14-15.  This agreement also states that it shall be interpreted and construed in accordance with the laws of Connecticut.  Def.'s UMF ¶ 19; Pl.'s UMF ¶ 16.

On January 1, 2005, Davis was promoted to Regional Sales Manager for ACT.  Def.'s UMF ¶ 20.  In that capacity, Davis was responsible for all of Defendants' sales activities in the

3

western United States, including California, Washington and Oregon.  Def.'s UMF ¶ 21.  As a management-level executive, Davis had access to virtually all customer data and technological know-how accumulated and maintained by Defendants, including a contact management system containing client data such as the names and contact information of all clients, prospective clients and leads, as well as other information concerning specifications, contact points and other client needs.  Def.'s UMF ¶ 27.

In October 2006, Davis resigned and became the western regional sales manager for IsoRay, Inc. ("IsoRay"), a direct competitor of Defendants.  Def.'s UMF ¶¶ 33-34; Pl.'s UMF ¶ 32. This position was based out of California.  Pl.'s UMF ¶ 33.

Aware that Defendants' had sought to enforce non-competition agreements against other employees, Davis filed a declaratory relief action against Defendants in Sacramento County Superior Court in October 2006 seeking a determination of the enforceability of the non-competition agreement under California law.  Notice of Removal ¶¶ 1-18.  On November 3, 2006, Defendants removed the action to federal court on the basis of diversity.  Notice of Removal ¶¶ 1-18.

On December 20, 2006, Defendants commenced a state action against Davis and IsoRay in Connecticut asserting the following claims: (1) breach of contract; (2) tortious interference with

4

business relations; (3) tortious interference with contractual relations; (4) violation of the Connecticut Unfair Trade Practices Act; and (5) violation of the Connecticut Uniform Trade Secrets Act.  Pl.'s UMF ¶ 18; Exh. F, attached In Support of Pl's MSJ/MSA.

## II. DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. § 56(c).

The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A fact is material if it could affect the outcome of the suit under the governing substantive law.   Id. at 248.  A material fact is "genuine," if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.   Id.  The burden then shifts to the nonmoving party to establish, beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue for trial.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

"'When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.'"  <u>Miller v. Glenn Miller Productions, Inc</u>**.**, 454 F.3d 975, 987 (9th Cir. 2006) (quoting <u>C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000)). When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ.P. 56(e).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." <u>Miller</u>, 454 F.3d at 988 (internal quotation marks omitted) (citing <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999)).  "But the non-moving party must come forward with more than 'the mere existence of a scintilla of evidence.'"  <u>Miller</u>, 454 F.3d at 988 (quoting <u>Anderson</u>, 477 U.S. at 252).  Thus, "'[w]here the record

taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no genuine issue for trial.'"

Miller, 454 F.3d at 988 (quoting Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Where divergent ultimate inferences may reasonably be drawn

from the undisputed facts, summary judgment is improper.

Miller, 454 F.3d at 988.

B.   Terms of the Non-Competition Agreement

The Non-competition Agreement provides, in relevant part,

that for two years following termination Davis agrees not to:

(1) accept employment with, or provide services, in any

capacity, to any competitor of the Company or its Affiliates or

to any other person, firm or entity which is engaged in any

business of the same or similar nature to the business of the

Company or its Affiliates; (2) solicit, perform or engage in any

business of the same or similar nature to the business of the

Company or its Affiliates anywhere within the Company's

territories or its Affiliates territories; (3) solicit, engage

in, perform, divert or accept any business of the same or

similar nature to the business of the Company or its Affiliates

with or from any customer or potential customer of the Company

or its Affiliates; (4) induce or attempt to induce any customer

of the Company or its Affiliates to reduce such customer's

business with the Company or its Affiliates or divert such

customer's business from the Company or its Affiliates by direct advertising, solicitation or otherwise; (5) disclose the names of any customers or any potential customers of the Company or its Affiliates to any other person, firm, corporation or other entity; (6) employ, hire, cause to be employed or hired, entice away, solicit or establish a business with any then current officer, employee, servant or agent of the Company or its Affiliates or any other person that was employed by the Company or its Affiliates within the twelve months immediately prior to such employment or establishment, or in any manner persuade or attempt to persuade any officer, employee, servant or agent of the Company or its Affiliates to leave the employ of the Company or its Affiliates; or (7) assist any person, firm, entity, employer, business associate or member of Employee's family to commit any of the foregoing acts.  Pl.'s UMF ¶ 14; Exh. B, attached In Support of Pl's MSJ/MSA.  The Non-Competition Agreement also contains a choice of law provision stating that it shall be interpreted and construed in accordance with the laws of Connecticut.  Pl.'s UMF ¶ 16.

C.   Choice of Law

Defendants argue that Connecticut law governs the instant action because the choice of law provision in the Non-Competition Agreement expressly states that the agreement shall be interpreted and construed in accordance with the laws of

Connecticut.  While Davis does not dispute the existence of the choice of law provision, he argues that California law should govern this action because Connecticut law conflicts with a fundamental policy of California and California has a "materially greater interest" in the outcome of this litigation than does Connecticut.  Thus, the threshold question is which state's law governs this action.

    1.  General Principles

    "Federal courts sitting in diversity apply 'the forum state's choice of law rules to determine the controlling substantive law.'"  <u>Fields v. Legacy Health System</u>, 413 F.3d 943, 950 (9th Cir. 2005) (quoting <u>Patton v. Cox</u>, 276 F.3d 493, 495 (9th Cir. 2002)).  California courts will enforce a choice of law clause in a contract in favor of another jurisdiction's law unless: "'(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'"  <u>See</u> <u>Nedlloyd Lines B.V. v. Superior Court of San Mateo</u>, 3 Cal.4th 459, 465 (1992) (quoting

Rest.2d, Conflict of Laws, § 187(2)); <u>Application Group, Inc. v.</u> <u>Hunter Group, Inc.</u>, 61 Cal.App.4th 881, 897 (1998).  "[T]he foregoing approach 'reflect[s] strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses.'"  <u>Washington Mutual Bank, FA v. Superior Court</u>, 24 Cal.4th 906, 917 (2001).

In short, "if the proponent of the [choice of law] clause . . . demonstrates that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law, the parties' choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue."  <u>Washington Mutual</u>, 24 Cal.4th at 917.  "'If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.'"  <u>Id</u>. at 916-917 (quoting <u>Nedlloyd</u>, 3 Cal.4th at 466).

2. Substantial Relationship/Reasonable Basis

In the case at bar, Defendants' state of incorporation, principal place of business and headquarters are all in Connecticut.  As such, there is both a "substantial relationship" between the contract and Connecticut and a "reasonable basis" for the parties' choice of law.  <u>See</u>

Application Group, 61 Cal.App.4th at 899 (finding that "the mere fact that one of the parties to the contract is incorporated in the chosen state is sufficient to support a finding of 'substantial relationship,' and the mere fact that one of the parties resides in the chosen state provides a 'reasonable basis' for the parties choice of law.'")  Accordingly, the next step is to determine whether a conflict of law exists between California and Connecticut and whether both have a significant interest in having its law applied.

    3. Conflict of Law & Significant Interest

    With respect to whether Connecticut law is contrary to a fundamental public policy of California in the determination of the particular issue (i.e., validity of the Non-Competition Agreement), the court must begin its analysis by determining whether Connecticut law is in conflict with California law and whether both have a significant interest in having its law applied.  See Application Group, 61 Cal.App.4th at 899-900.  If the court finds that both states have a significant interest in having their law applied, and the law of the chosen state is contrary to a fundamental policy of the forum state, the court must weigh the chosen state's interests against the forum state's public policy interests and determine which state has

the "materially greater interest" in having its law applied. Id.[4]

Under Connecticut law, restrictive covenants made in an employment agreement "may be against public policy, and, thus, are enforceable only if their imposed restraint is reasonable, an assessment that depends upon the competing needs of the parties as well as the needs of the public.  These needs include: (1) the employer's need to protect legitimate business interests, such as trade secrets and customer lists; (2) the employee's need to earn a living; and (3) the public's need to secure the employee's presence in the labor pool." Deming v. Nationwide Mutual Ins. Co., 279 Conn. 745, 761 (2006). Connecticut courts consider the following factors in determining whether a restrictive covenant in an employment agreement is reasonable: "'(1) the length of time the restriction operates; (2) the geographic area covered; (3) the fairness of the

_____

[4]   "California applies a three-step 'governmental interest' analysis to choice-of-law questions: (1) 'the court examines the substantive laws of each jurisdiction to determine whether the laws differ as applied to the relevant transaction,' (2) 'if the laws do differ, the court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied,' and (3) 'if more than one jurisdiction has a legitimate interest . . . the court [must] identify and apply the law of the state whose interest would be more impaired if its law were not applied.'  Only if both states have a legitimate but conflicting interest in applying its own law will the court be confronted with a 'true conflict' case." Downing v. Abercrombie & Fitch, 265 F.3d 994, 1005 (9th Cir. 2001) (citation omitted).

protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests.'"  United Rentals, Inc. v. Pruett, 296 F.Supp.2d 220, 231 (D. Conn. 2003).

Conversely, under California law, the legislature has expressly rejected the common law 'rule of reasonableness' with respect to restraints on the practice of a profession, trade or business.  Hill Medical Corp. v. Wycoff, 86 Cal.App.4th 895, 900-901 (2001); see Cal. Bus. & Prof. Code, § 16600 (stating that the general rule in California is that covenants not to compete are void).[5]  The settled public policy of California favors open competition and the ability of every citizen to pursue any lawful employment enterprise of their choice.  Hill Medical, 86 Cal.App.4th at 900-901; see Application Group, 61 Cal.App.4th at 900 (observing that section 16600 reflects a "strong public policy" of California).  To effectuate this policy, covenants not to compete in a contract are generally void, and, thus unenforceable in California, except where the covenant is executed as part of the sale of the goodwill of a business or where a partner agrees not to compete in

_____

[5]   Section 16600 states that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code, § 16600.

13

anticipation of dissolution of a partnership.  See Kelton v. Stravinski, 138 Cal.App.4th 941, 946-947, 949 (2006) (observing that a contract made contrary to public policy may not serve as the foundation of any action and therefore when the parties come to court for relief they will be left where they are found).

In the instant action, Connecticut law conflicts with a fundamental policy of California insofar as Connecticut will enforce certain covenants not to compete if the imposed restraints are reasonable, while California will not enforce such covenants, except in narrowly proscribed circumstances. See Application Group, 61 Cal.App.4th at 899-900 (observing that the common law rule of reasonableness regarding the enforceability of a covenant not to compete is "diametrically opposed" to California's approach to the enforceability of a covenant not to compete); United Rentals, 296 F.Supp.2d at 231 (Connecticut court observing that because Connecticut law enforces certain restrictive covenants in employee contracts, and therefore restricts the mobility of employees and the exercise of free competition, "it collides with California's blanket policy" prohibiting such covenants).[6]

---

[6]     See Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal.App.4th 853, 859 (1994) ("Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when employment has

Thus, the court must next determine whether the respective states have a significant interest in applying their own law. See Rosenthal v. Fonda, 862 F.2d 1398, 1402 (9th Cir. 1988).  If only one state has a legitimate interest in the application of its law, then the law of that state controls.  Id.

As the forum state, California has an interest in applying its law to this case.  See Rosenthal, 862 F.2d at 1402 (noting that, "[a]s the forum, a California court will conclude that a conflict is 'false' and apply its own law unless the application of the foreign law will 'significantly advance the interests of the foreign state.'"); see also Int'l Business Machines Corp. v. Bajorek, 191 F.3d 1033, 1042 (9th Cir. 1999) (observing that California has a considerable interest in protecting its citizens from oppressive contracts (e.g., non-competition contracts) imposed by employers).

Likewise, Connecticut has a legitimate interest in applying its law because Defendants' state of incorporation, principal place of business and headquarters are located in Connecticut. Application Group, 61 Cal.App.4th at 899, n.14 (observing that a state has an interest "in the enforceability of covenants not to compete, valid where made, and the competitive advantages of such provisions"); Int'l Business Machines, 191 F.3d at 1042

terminated, unless necessary to protect the employer's trade secrets.")

(observing that New York has a considerable interest in providing coherent, predictable uniform law governing exchange of stock by corporations headquartered and trading stock there). Thus, because both states have a legitimate but conflicting interest in applying its own law, the court is confronted with a "true conflict" and therefore must identify and apply the law of the state whose interest would be more impaired if its law were not applied.  Put another way, the court must determine which state has the "materially greater interest" in having its law applied by weighing the chosen state's interests against the forum state's public policy interests.  See Application Group, 61 Cal.App.4th at 898-899 (emphasis in original) ("a court can decline to enforce the parties' contractual choice-of-law provision only if the interests of the forum state are 'materially greater' than those of the chosen state, and the forum state's interests would be more seriously impaired by enforcement of the parties' contractual choice-of-law provision than would the interests of the chosen state by application of the law of the forum state.")

4. Materially Greater Interest

In the instant action, it is undisputed that Davis resided and worked out of California during his employment with Defendants.  It is also undisputed that Davis currently resides in California and works out of California for IsoRay.

Additionally, the parties do not dispute that Defendants interviewed and hired Davis' in Las Vegas and that Davis was responsible for sales in the western region of the United States, including California, not Connecticut.  Further, the parties do not dispute that Davis reported to supervisors in Arizona and Colorado, not Connecticut.  Finally, the parties do not dispute that Defendants are a national company doing business in every state and are incorporated and headquartered in Connecticut.[7]

Based on the foregoing, the court concludes that California has a "materially greater interest" in the outcome of this case than Connecticut and that California's interests would be more seriously impaired by enforcement of the parties' contractual choice of law provision than would the interests of Connecticut if California law were applied.  First, California has a "materially greater interest" in the outcome of this case because it has a greater connection to the facts of this case. Davis is a resident of California and currently works out of

---

[7]     The parties do however dispute where the Non-Competition Agreement was signed.  Davis claims it was signed in San Diego, while Defendants contend that it was signed in Connecticut. Neither party has presented conclusive evidence demonstrating where the Agreement was actually signed.  While important, resolution of this issue is not necessary for the determination of which state's law applies.

California for IsoRay.[8]  At all times during his employ with Defendants, Davis resided and worked out of California and his responsibilities included sales in California, not Connecticut. Moreover, Davis reported to supervisors in Arizona and Colorado, not Connecticut.  As such, Davis' responsibilities and supervision had little or nothing to do with Connecticut.  For these reasons, the court concludes that California has a "materially greater interest" in the outcome of this case than Connecticut because it has a greater connection with the facts of this case and the determination of the enforceability of the Non-Competition Agreement will affect whether Davis, a California resident, will be permitted to remain employed in California.  See Application Group, 61 Cal.App.4th at 991 (finding that California had a "materially greater interest" than Maryland in the outcome of the case because California has a strong interest in ensuring that California-based employers can effectively compete for talented employees and protect employers and employees from anticompetitive conduct from out-of-state employers);[9] Pruett, 296 F.Supp.2d at 232-233 (finding

---

[8]    Indeed, Defendants do not dispute Davis' assertion that he performs "a large majority of his work [for Isoray] in California."  Pl's UMF ¶ 31.

[9]    In Application Group, the court noted at the outset that there was no real dispute that a former employer could not enforce a covenant not to compete against a California resident

that California had a "materially greater interest" in the

outcome of a case where the employee was a California resident

hired by a California-based employer and Connecticut was found

to have little connection to the facts of the litigation (other

than being the location of the former employer's headquarters)

and no strong policy in favor of keeping the case in

Connecticut).[10]

Second, California's interests would be more seriously

impaired by enforcement of the parties' contractual choice of

law provision than would the interests of Connecticut if

California law were applied.  This is because Defendants have

failed to articulate a compelling interest or policy of

Connecticut that outweighs California's strong interest in

protecting its employees from anti-competitive conduct by out-

---

who joined a California-based employer.  <u>Application Group</u>, 61
Cal.App.4th at 895.

[10]   While the court recognizes that Davis was not hired by a
California corporation, he resides and currently performs a
majority of his work in California.  The court finds that such
circumstances are sufficient to afford Davis the protection of
California's longstanding policy of strongly favoring the right
of every citizen to pursue any lawful employment and enterprise
of their choice.  <u>See</u> <u>Application Group</u>, 61 Cal.App.4th at 900;
<u>see</u> <u>also</u> <u>Whyte v. Schlage Lock Co.</u>, 101 Cal.App.4th 1443, 1462
(2002) (noting that California public policy "generally
prohibits covenants not to compete," and "strongly favors
employee mobility"); <u>Metro Traffic Control</u>, 22 Cal.App.4th at 860
("California courts have held that 'the interests of the
employee in his own mobility and betterment are deemed paramount
to the competitive business interests of the employers, where
neither the employee nor his new employer has committed any
illegal act accompanying the employment change.'")

of-state employers.  As such, California's interests would be more seriously impaired by enforcement of the parties' contractual choice of law provision than would the interests of Connecticut if California law were applied.  <u>See</u> Cal. Bus. & Prof. Code, § 16600 (stating covenants not to compete are generally void in California); <u>Hill Medical</u>, 86 Cal.App.4th at 900-901 (California has a "strong public policy" favoring open competition and the ability of every citizen to pursue any lawful employment enterprise of their choice); <u>Metro Traffic Control</u>, 22 Cal.App.4th at 860 ("California courts have held that 'the interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change.'")

For these reasons, the court concludes, on balance, that California has a "materially greater interest" in the outcome of this case than Connecticut, and that California's interests would be more seriously impaired by enforcement of the parties' contractual choice of law provision than would the interests of Connecticut if California law were applied.

//

//

//

    5. State of Applicable Law in the Absence of a Contractual
       Choice of Law Provision

    The final step in California's conflict of law analysis is
to determine which state's law would apply in the absence of an
effective contractual choice of law provision under § 188 of the
Restatement of Conflict of Laws.  Section 188 provides:

> (1) The rights and duties of the parties with respect
> to an issue in contract are determined by the local
> law of the state which, with respect to that issue,
> has the most significant relationship to the
> transaction and the parties under the principles
> stated in § 6.
> (2) In the absence of an effective choice of law by
> the parties (see § 187), the contacts to be taken into
> account in applying the principles of § 6 to determine
> the law applicable to an issue include:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract,
> and
> (e) the domicil, residence, nationality, place of
> incorporation and place of business of the parties.
> These contacts are to be evaluated according to their
> relative importance with respect to the particular
> issue.
> (3) If the place of negotiating the contract and the
> place of performance are in the same state, the local law
> of this state will usually be applied, except as
> otherwise provided in §§ 189-199 and 203.

Rest.2d, Conflicts of Law § 188(1)-(3).

    As § 188 plainly provides, a court must analyze section 188
under the principles of § 6.  Section 6 provides:

> (1) A court, subject to constitutional restrictions,
> will follow a statutory directive of its own state on
> choice of law.
> (2) When there is no such directive, the factors
> relevant to the choice of the applicable rule of law

include
(a) the needs of the interstate and international
systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states
and the relative interests of those states in the
determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field
of law,
(f) certainty, predictability and uniformity of result,
and
(g) ease in the determination and application of the
law to be applied.

Rest.2d, Conflicts of Law, § 6.

These factors suggest that California should be the "state of applicable law" under both § 188 and § 6. While the place of contracting with respect to the Non-Competition Agreement is in dispute, the parties do not dispute that Davis was interviewed, hired, and signed an offer letter in Nevada, not Connecticut. Thus, at best, only part of the employment contract (i.e., Non-Competition Agreement) was negotiated and signed in Connecticut. Importantly, because Davis was based out of California, and responsible for sales in California, the subject matter and performance of the contract occurred at least in part in California. Further, because Davis was assigned to the western region, and reported to supervisors in Arizona and Colorado, his responsibilities and supervision had little or nothing to do with Connecticut. Finally, at all relevant times, Davis resided and worked out of California. Therefore, the alleged breach of

the agreement occurred in California when Davis accepted

employment with Isoray to work out of California.

While the court recognizes that Defendants are incorporated

and headquartered in Connecticut, and that application of

Connecticut law arguably will provide certainty, predictability

and uniformity of result, the court finds that the most

significant contacts in the case are in California.

Additionally, the court finds that, as discussed above,

California's strong interest and well-settled public policy of

protecting resident employees from out-of-state anticompetitive

conduct seeking to restrict a citizen employee's mobility and

right to pursue any lawful employment enterprise of their

choice, weighs strongly in favor of applying California,

especially since Defendants have failed to articulate any

countervailing compelling policy or interest of Connecticut that

would warrant application of Connecticut law.[11]

Accordingly, the court concludes that, on balance,

California law would apply in the absence of a valid choice of

law provision because it has the most significant relationship

---

[11]    Finally, the court finds that Defendants have failed to
demonstrate that they had a justified expectation that
Connecticut law would apply or that Connecticut law would be
easier to determine or apply than California law.  Indeed,
California law would be easier to apply inasmuch as it would
void the Non-Competition Agreement without the need to determine
whether the agreement was reasonable.

to the transaction and the parties.  The court further concludes

that, to the extent that applying Connecticut law would provide

certainty, predictability and uniformity, this does not outweigh

California's strong interest and well-settled public policy of

protecting its citizens from out-of-state anticompetitive

conduct that restricts an employee's mobility and right to

pursue any lawful employment enterprise of their choice.

For these reasons, the court concludes that California law

is applicable to this dispute.  As such, the court holds that

the Non-Competition Agreement is invalid and unenforceable as a

matter of law.  The agreement violates California's well-settled

public policy prohibiting covenants not to compete.[12]

### III. CONCLUSION

For the above stated reasons, the Court GRANTS Davis'

motion for summary judgment.


IT IS SO ORDERED.

ENTERED this 7th day of August, 2007.

> s/RALPH R. BEISTLINE
> United States District Judge

---

[12]   Because the court concludes that Non-Competition Agreement
is unenforceable under California law, it need not address
Davis' alternative argument that the agreement has expired.